COMMONWEALTH vs. JOHN DiLEGO, THIRD.

Berkshire.   May 7, 1982. — September 7, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Evidence,* Polygraphic test, Recent invention, Prior consistent statement.

The results of a polygraph examination may not be introduced at a crimi-
nal trial for the purpose of corroborating the testimony of a prosecution
witness, at least in the absence of an appropriate stipulation concerning
the admissibility of the results of such an examination. [396-398]

INDICTMENTS found and returned in the Superior Court
Department on March 2, 1981.

After review was   sought in the Appeals Court, the
Supreme Judicial Court ordered direct appellate review on
its own initiative.

The cases were tried before *Cross*, J.

*John F. McLaughlin, Jr.,* for the defendant.

*Daniel A. Ford,* Assistant District Attorney, for the Com-
monwealth.

WILKINS, J.   We are squarely presented with whether a
trial judge may, in his discretion, admit the results of a poly-
graph examination to corroborate the testimony of a prose-
cution witness.   We conclude that a judge may not, at least
in the absence of an appropriate stipulation concerning the
admissibility of the results of such an examination.

The defendant was convicted in May, 1981, of attempted
arson and of perjury following a jury trial in the Superior
Court in Berkshire County.   He was charged with attempt-
ing to burn a building and with two counts of perjury in tes-
timony before a grand jury in which he denied his involve-
ment in the attempted arson.   The Commonwealth's case
against the defendant depended on the testimony of one
Ronald Thomas.

Originally, Thomas had denied the defendant's involve-
ment in the crime.   On December 19, 1980, Thomas had
been given a polygraph examination in which he denied the

defendant's involvement. On February 10, 1981, Thomas was convicted of the attempted arson of the same building, arising out of the same incident. Following Thomas's conviction, the prosecutor recommended a sentence of from five to seven years at the Massachusetts Correctional Institution at Walpole. Sentencing was deferred until March 19, 1981. Thomas did not want to serve a sentence at Walpole, and he changed his position concerning the defendant's involvement in the attempted arson. On February 18, 1981, Thomas gave a statement describing the defendant's involvement. The prosecution agreed to bring Thomas's cooperation to the attention of the sentencing judge, provided Thomas gave a complete statement and "passed" a polygraph examination. A second polygraph examination was given on March 12, 1981, in which Thomas stated that the defendant had been involved in the attempted arson. After the test results were received, the prosecutor recommended a sentence of two and one-half years in a house of correction, and, on March 19, 1981, the judge imposed a two-year sentence to be served in a house of correction.

At the defendant's trial, Thomas testified concerning the defendant's participation in the attempted arson. He testified that his earlier statements that the defendant was not involved were incorrect, that he had changed his story after he was found guilty, and that his more recent statements concerning the defendant's involvement were true. After other evidence was introduced, the Commonwealth called the polygraph examiner who had conducted both polygraph examinations of Thomas. The judge held a lengthy voir dire concerning the two examinations, made detailed findings, and ruled the results of each test were admissible, but solely on the question of Thomas's credibility. The examiner then testified before the jury that, in his opinion, (a) Thomas was "conclusively deceptive" when he said at the first examination on December 19, 1980, that the defendant was not involved in the attempted arson and (b) Thomas was "conclusively truthful" when he said at the second examination on March 12, 1981, that the defendant was involved.

The jury returned guilty verdicts on the perjury and attempted arson charges. The defendant was sentenced to concurrent sentences of from four and one-half to six years at the Massachusetts Correctional Institution at Walpole, but execution of sentence was stayed pending appeal.

1. We hold that it was error to admit the results of a polygraph examination to corroborate the testimony of Thomas, the principal prosecution witness. The question of the admissibility in this Commonwealth of such evidence to corroborate (or to impeach) the testimony of a witness, other than a defendant, was an open one at the time of the trial. This court has set forth procedures for the admissibility of the results of a polygraph examination of a defendant (*Commonwealth* v. *A Juvenile,* 365 Mass. 421 [1974]), and has limited the admissibility of the results of such tests to the impeachment or corroboration of a criminal defendant's testimony (*Commonwealth* v. *Vitello,* 376 Mass. 426, 453-457 [1978]). To this point, we have carefully left undecided the question of the admissibility of the results of a polygraph examination given to a witness other than a defendant. In *Commonwealth* v. *Wilborne,* 382 Mass. 241 (1981), where the defendant wished to impeach a prosecution witness by asking her whether she had taken and failed such an examination, we upheld the judge's exclusion of the question. But we did not pass on the general proposition and stated that we intimated no view on the admissibility of the results of a witness's polygraph examination. *Id.* at 248-249. Earlier, in 1979, in reviewing various opinions in other courts, we concluded that, assuming such evidence might be admissible, the judge did not abuse his discretion in excluding the results of a polygraph examination given to a prosecution witness. *Commonwealth* v. *Moore,* 379 Mass. 106, 114 (1979). We said that, in that situation, "we think it the part of wisdom to reserve again the question whether evidence of a polygraph test is ever admissible to impeach a prosecution witness." *Id.*[1]

---

[1] *Commonwealth* v. *Moore,* 379 Mass. 106 (1979), notes earlier opinions of this court touching on, but not deciding, the question of polygraph

The issue cannot reasonably be avoided in this case. The judge heard evidence concerning the procedures followed in conducting the tests and concerning the reliability of the results. He made complete findings of fact and admitted the evidence in his discretion, carefully limiting its use to the question of Thomas's credibility. He concluded that the test results were admissible to rebut the inherent claim that Thomas's trial testimony was of recent contrivance. Certainly, the admission of this evidence cannot be fairly upheld on the ground that the admission, even if error, was not prejudicial to the defendant.

The polygraph test results of a criminal defendant are admissible only if the defendant agrees in advance of the test that adverse results can be admitted for impeachment purposes if he chooses to take the stand. *Commonwealth* v. *Vitello, supra* at 430 n.2. Here, there was no advance stipulation by the defendant or by the Commonwealth concerning the admissibility of polygraph test results. Consistent with our case by case treatment of the subject of the admissibility of polygraph test results, we express no opinion on their admissibility when, in advance of the test, the defendant or the Commonwealth, or both, agree to their admission to impeach or to corroborate the testimony of a witness. In the case before us, we have no stipulation.[2]

The truthfulness of the testimony of a witness generally will not have as direct a bearing on a defendant's guilt as the truthfulness of the testimony of the defendant himself. The

---

tests of persons other than the defendant. *Id.* at 112-113, citing *Commonwealth* v. *Stewart*, 375 Mass. 380, 383-385 (1978), and *Commonwealth* v. *Chase*, 372 Mass. 736, 751-752 (1977).

[2] A stipulation, of course, does nothing to enhance the reliability of polygraph evidence. Cf. *State* v. *Dean*, 103 Wis. 2d 228, 269-270 & n.19 (1981) (stipulation adds "little"). However, such a stipulation may constitute a waiver of any objection to the admissibility of evidence.

We also leave open the possibility that, in certain circumstances, the results of polygraph examinations may be appropriately used, without stipulation, in considering motions for new trial based on allegedly newly discovered evidence. See *People* v. *Barbara*, 400 Mich. 352, 411-414 (1977).

processes to be followed in admitting evidence of the results of a polygraph examination consume a great deal of time, and such evidence may divert the attention of the trier of fact from the question of the defendant's guilt toward the question whether a witness "passed" or "failed" the test. *Commonwealth* v. *Vitello, supra* at 444-445. At this stage of the development of polygraph examinations, we thus decline to extend the principles of the *Vitello* case beyond the defendant to other witnesses, at least in the absence of an appropriate stipulation (and even then we reserve judgment on the issue). In this country, the general rule, particularly in the absence of any stipulation, is to exclude evidence of polygraph test results offered to corroborate or to impeach a prosecution witness. See the cases cited in *Commonwealth* v. *Moore, supra* at 113-114; Annot., 43 A.L.R. Fed. 68, 79 n.25 (1979) ("No case has been found in which a United States attorney sought to establish the credibility of his witnesses by the introduction of a polygraph test showing the witnesses' veracity . . . .").

We do not fault the judge who acted conscientiously in the exercise of his discretion. We simply conclude that the judge had no discretionary authority to admit the results of Thomas's polygraph examinations. The defendant's conviction must, therefore, be reversed and the matter remanded for a new trial.

2. Another issue has been argued that may arise at any retrial. The defendant contends that it was error to admit evidence of statements that Thomas made on February 18, 1981, after he changed his position and implicated the defendant in the attempted arson. The defendant claims that these statements were inadmissible prior consistent statements. His argument is that, to meet the charge that Thomas's testimony was a recent contrivance, the prosecution may not, over objection, introduce consistent statements made only after Thomas was motivated to change his story.[3]

---

[3] As the issue is presented in the defendant's brief, he challenges questions put to Thomas on redirect examination concerning what he said to a State trooper on February 18, 1981. In fact, Thomas testified to very little

There is no question that Thomas's testimony was subject to the claim that it was of recent contrivance. That fact is not dispositive. Thomas's statements of February 18, which were consistent with his trial testimony, were made after he said that the defendant was not involved in the crime and after his conviction, at which time a strong motive to involve the defendant arose. In such cases, the general rule is that a prior consistent statement is not admissible. See *Commonwealth* v. *Saarela*, 376 Mass. 720, 722-723 (1978); *Commonwealth* v. *Zukoski*, 370 Mass. 23, 26-27 (1976). When, however, a witness is impeached by a prior inconsistent statement, the witness may be allowed, on redirect examination, to explain the prior statement and the reason for any omission or inconsistency. To put the prior statement in context or in order to show it was not inconsistent, evidence of what he said may be admitted in certain circumstances. See *Commonwealth* v. *Hoffer*, 375 Mass. 369, 375-376 (1978); *Commonwealth* v. *Darden*, 5 Mass. App. Ct. 522, 527-528 (1977).

Much depends on the context in which the issue arises in the course of a trial, and we would give considerable discretion to the trial judge. Because we do not know how the issue might arise at a retrial of the defendant, there is little more we can add. We doubt, however, that it would be proper to admit evidence of Thomas's statements to the State trooper on February 18 simply because Thomas was impeached by prior inconsistent statements and testified that his February 18 statements were true. Thomas, of course, could explain why he changed his position but, over the defendant's objection, what he said out of court after he

---

of what he said on that date. Curiously, the defendant does not argue explicitly that it was error to permit the State trooper, over objection, to testify fully to Thomas's February 18 recantation of his earlier statements concerning the defendant and to the defendant's involvement.

The defendant objected generally to the admission of statements made by Thomas on February 18. When the objections were overruled, he did not request an instruction, as he could have, that the evidence not be considered as proof of the facts asserted. See *Commonwealth* v. *Zukoski*, 370 Mass. 23, 27 (1976).

changed his position may well not be admissible in the circumstances.

3. The judgments are reversed, the verdicts are set aside, and the case is remanded to the Superior Court for a new trial.

*So ordered.*