COMMONWEALTH *vs.* WILLIAM E. WALKER.

Suffolk. February 7, 1984. — June 7, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Evidence,* Polygraphic test. *Witness,* Polygraphic test, Impeachment.

Discussion of prior decisions of this court on the admissibility of polygraph
    evidence. [154-159]
The results of a nonparty witness's polygraph examination may not be intro-
    duced at a criminal trial for the purposes of impeaching the credibility
    of the nonparty witness, even if there has been a stipulation agreeing to
    the admissibility of the results of such an examination. [159-160]

COMPLAINT received and sworn to in the Dorchester Division
of the District Court Department on July 8, 1982.

Following transfer to the jury session of the Boston Munic-
ipal Court Department, the case was reported to the Appeals
Court by *Grabau,* J. The Supreme Judicial Court ordered direct
review on its own initiative.

*John N. Tramontozzi,* Assistant District Attorney, for the
Commonwealth.

*Geline W. Williams* for the defendant.

NOLAN, J. This case presents the question whether a defend-
ant in a criminal case may introduce polygraph evidence to
impeach the credibility of a witness. For reasons which appear
below, we conclude that the results of a nonparty witness's
polygraph examination are not admissible in evidence in a
criminal case, even if there is an agreement concerning the
admission of those results.

The case, reported to the Appeals Court by a judge of the
jury-of-six session of the Boston Municipal Court, was trans-
ferred to this court on our own motion. Facts stipulated by the
parties, and the proceedings below, may be summarized as
follows. The mother of an illegitimate child obtained a com-

plaint charging the defendant with nonsupport pursuant to G. L. c. 273, § 15. The child was conceived in late December, 1980, or early January, 1981. During the probable time of conception, the complaining witness and the defendant engaged in sexual relations once, on January 2 or 3, 1981. On New Year's Eve, 1980, the complaining witness's companion was someone other than the defendant. That companion is no longer in the Commonwealth. Blood group tests do not exclude the defendant as the father of the child.

After the criminal complaint for nonsupport issued, but before the defendant's arraignment or the assignment of an assistant district attorney to this matter, the defendant and his counsel, and the complainant and her private counsel stipulated that the complainant would take a polygraph examination, the results of which would be "admissible into evidence to support or impeach the testimony of [the complainant] and neither party shall object to the admission thereof" in any criminal or civil litigation between the parties.

The examination was conducted at the office of the complainant's private counsel. The results of the examination indicated that the complainant was not being truthful when she denied having intercourse with her New Year's Eve escort.

Prior to trial, the defendant filed a motion in limine requesting a ruling that the Commonwealth be bound by the stipulation, and that the polygraph examination results be admissible at trial. The judge denied the motion without prejudice because the Commonwealth was not a party to the stipulation and because the court had not had an opportunity to conduct a voir dire hearing regarding the polygraph examiner's qualifications. The judge correctly noted the novelty of the issue: the question of admissibility of polygraph evidence of a witness by stipulation of the parties has not previously been answered by this court. Further, he ruled that a voir dire hearing concerning the examiner's qualifications and the test conditions was necessary in order to make certain that the introduction of polygraph evidence would comport with the standards set forth in *Commonwealth* v. *A Juvenile,* 365 Mass. 421, 429-433 (1974) (*A Juvenile I*).

Following a hearing which was held after the defendant renewed his motion in limine and for a voir dire hearing, the judge found that the polygraph examiner was qualified and that the examination was conducted in a fair and proper manner. The judge also determined that the polygraph results could not be used pursuant to the stipulation, because the Commonwealth was not a party thereto. However, he ruled that the evidence would be admissible for impeachment purposes, owing to the quasi-criminal nature of the proceeding. The judge expressed his intent to permit cross-examination of the polygraph examiner by the Commonwealth and to instruct the jury regarding the limited purpose of the test results. However, prior to trial, the judge reported the case, noting his concern that if his ruling on the defendant's motion in limine were incorrect, the child's right to seek support from the putative father could be irreparably harmed.

On appeal, the Commonwealth asserts that the evidence cannot be admitted in the absence of its participation in the stipulation. The defendant argues that the polygraph evidence is admissible because the stipulation is proper, because the evidence is both material and exculpatory, and because refusal to admit the evidence would violate his constitutional rights to due process of law and to confrontation of witnesses.

This court has not, to date, had the occasion to address the admissibility of a witness's polygraph evidence where a stipulation exists concerning its use. See *Commonwealth* v. *DiLego,* 387 Mass. 394, 397-398 (1982). Turning first to the broader issue of the admissibility of a witness's polygraph evidence, we pause to review our previous decisions concerning polygraphy. Historically, our focus regarding "lie detector" evidence has been upon the admissibility of the results of a criminal defendant's polygraph examination. In that vein, we have taken a cautious approach, moving slowly from our initial determination that polygraph evidence had not yet achieved sufficient scientific acceptability to warrant admissibility. *Commonwealth* v. *Fatalo,* 346 Mass. 266, 270 (1963). More than a decade later, we reconsidered this issue, and held that the results of a criminal defendant's examination might be admis-

sible if a defendant moved to submit to such an examination, but only in very limited circumstances. *A Juvenile I,* 365 Mass. 421 (1974). In *A Juvenile I,* we held that on the defendant's request, polygraph evidence might be admissible only if the trial judge were satisfied as to the examiner's qualifications, if the defendant agreed in advance of examination to admissibility regardless of outcome, and if the trial judge, after a voir dire hearing, made written findings concerning the defendant's voluntary submission to the examination and his understanding of the consequences of so doing. *Id.* at 429-431. These safeguards were seen as essential since submission to a polygraph examination necessarily involves a waiver of certain Fifth Amendment rights, which cannot be abridged through any compulsion. *Id.* at 431-432. We further noted that both parties retained all rights of cross-examination of the expert administering the test, regardless of which party selected the expert. *Id.* at 432. Resting as it did upon extensive judicial oversight and discretion concerning the examination procedure, and provoking strong dissent demanding further safeguards and study, *A Juvenile I* was a wary approach to a type of evidence which this court perceived as useful to the criminal trial process, but not as yet meeting the requisites of admissibility for scientific evidence in general. *A Juvenile I, supra* at 425.[1]

Decisions following *A Juvenile I* refined the conditions of admissibility and utility of polygraph evidence. We held that such evidence could never be determinative of a trial's outcome,

---

[1] That case again received this court's consideration when, on remand, the trial judge refused to admit the examination results inasmuch as they were known to the defendant prior to his motion to admit them. *Commonwealth* v. *A Juvenile,* 370 Mass. 450, 452-454 (1976) (*A Juvenile II*). We held those results inadmissible over the Commonwealth's objections, stressing that the defendant must agree in advance to testing. *Id.* at 453. Further, we perceived no error in the trial judge's refusal to permit introduction of a new polygraph examination, even if the expert administering the test were newly chosen, in view of the trial judge's proper consideration of an expert opinion that the defendant was no longer a suitable subject for polygraph examination. *Id.* at 452-453. Although we noted the harsh appearance of not permitting the defendant in *A Juvenile II* to benefit from the precedent he helped create, we were unwilling to allow any retrenchment from the safeguards established in the earlier decision. *Id.* at 454.

and found error in conditioning a finding of guilt or innocence on the defendant's satisfactorily "passing" a polygraph test. *Commonwealth* v. *Howard,* 367 Mass. 569, 570-573 (1975). We have reaffirmed the importance of the role of the trial judge in deciding whether a polygraph examination was properly conducted by a qualified expert and whether the polygraph results are sufficiently reliable in the particular circumstances to be given to the jury. *Commonwealth* v. *Graziano,* 371 Mass. 596, 598-600 (1976). This court upheld the trial judge's refusal to permit introduction of a deceased witness's polygraph examination, where no advance agreement existed concerning its use, and where the witness's statements were not admissible under any exception to the hearsay rule. *Commonwealth* v. *Chase,* 372 Mass. 736, 751-752 (1977). In *Commonwealth* v. *Chase, supra,* we stated that evidence not reliable in the first instance would not be rendered reliable when cloaked in scientific garb. *Id.* Additionally, we repeated the message of *A Juvenile I,* that a polygraph examination may never be compulsory, in the context of a defendant's motion to compel a witness to submit to a polygraph test. *Commonwealth* v. *Stewart,* 375 Mass. 380, 383-385 (1978). Without deciding whether polygraphy might ever be useful to support or to impeach a witness, we perceived the agreement of the person to be tested to be a necessary precondition to further consideration of that issue. *Id.* at 384-385.

This court's next major examination of the role of polygraph evidence in criminal trials came with the companion decisions in *Commonwealth* v. *Vitello,* 376 Mass. 426 (1978), and *Commonwealth* v. *Moynihan,* 376 Mass. 468 (1978). In *Vitello, supra* at 430-431, we stated that we had never specifically overruled *Commonwealth* v. *Fatalo, supra,* and repeated our view that polygraph evidence had not yet achieved a level of general acceptance sufficient to warrant its admissibility in all circumstances. Further, in elaborating upon the polygraph method itself, we noted that, along with controversy surrounding its reliability as to physiological responses, the test relies primarily on psychology, particularly the creation of an "image of infallibility" in the subject's mind. *Commonwealth* v. *Vitello,*

*supra* at 431-436. Moreover, the polygraph process is almost wholly dependent upon the examiner's observations of the subject and his interpretations of the machine's data; the machine itself cannot discern "truth." *Id.* at 435-439.

In this light, the polygraph examination may be seen as a machine-assisted psychological evaluation, relying upon the examiner's skill in interpreting physiological responses and behavioral clues, and depending for success not only on the subject's belief in the machine's reliability, but also on the subject's attitude toward his own behavior. *Commonwealth* v. *Vitello, supra* at 438-440. In *Vitello, supra* at 442-446, we perceived that polygraph evidence, while of only arguable scientific validity, carried an aura of reliability which threatened to transform the courtroom into a battleground for experts and usurp the fact-finding function of the jury. Further, the application of the safeguards required by *A Juvenile I,* along with the time necessary for expert testimony, makes the admission of polygraph evidence costly in its consumption of judicial resources. *Commonwealth* v. *Vitello, supra* at 446-447. For all these reasons, we concluded that polygraph evidence could never be admissible as part of either party's case in chief. *Id.* at 451-453. Rather than bar the introduction of all polygraph evidence, however, we held it might be introduced for the narrow purpose of corroborating or impeaching a defendant's testimony. *Id.* at 453-457. Although in submitting to examination a defendant gambles with his decision to testify at trial, since he can bar introduction of the results only by refusing to testify, limiting instructions are warranted where a defendant does testify and unfavorable polygraph evidence is introduced. *Id.* at 455-457.

The use of unfavorable polygraph evidence as part of the prosecution's case in chief was held to be reversible error in *Commonwealth* v. *Vitello, supra* at 457. However, in *Commonwealth* v. *Moynihan,* 376 Mass. 468, 477-479 (1978), we approved the judge's ruling that polygraph evidence was admissible only to impeach or to corroborate a defendant's testimony, because it relates only to truthfulness, not to whether a defendant committed the crime charged. *Id.* at 477-478. There

we noted that no agreement between the parties concerning use of the evidence can control the limited admissibility of polygraph evidence for impeachment or corroboration only. *Id.* at 479 n.5.

More recently, the issue of the admissibility of a witness's polygraph results has come to the fore. In *Commonwealth* v. *Moore,* 379 Mass. 106, 113-114 (1979), we reviewed the decisions of other jurisdictions, noting that various preconditions to admissibility, such as the witness's or the defendant's stipulation, have sometimes been established. *Id.* However, in *Moore* we reserved decision as to whether a witness might be impeached by his polygraph results, and perceived no error in refusing to admit such evidence where, because of the number of witnesses to be heard, it was likely to be diversionary and confusing to the jury, and where no offer of proof regarding the reliability in the test circumstances was made. *Id.*

*Commonwealth* v. *Wilborne,* 382 Mass. 241, 246-248 (1981), was a case which considered whether a defendant might be permitted to inquire, on cross-examination, if a prosecution witness had submitted to a lie detector test. Without deciding whether a witness's polygraph results might ever be admissible in evidence, we held that there was no error in refusing to permit such inquiry where no foundation had been laid concerning the testing conditions and expert qualifications, and where it would be inappropriate to elicit from a lay witness information which is properly the subject of expert opinion. *Id.* at 248-249.

The issue of witness polygraphy was again discussed in *Commonwealth* v. *DiLego,* 387 Mass. 394, 396-398 (1982), but the precise issue in the present case was left open. There, we held that there was error in admitting such evidence to impeach the principal prosecution witness where no stipulation by the defendant or the Commonwealth existed as to its admissibility. *Id.* at 397. We noted there that the "truthfulness of the testimony of a witness generally will not have as direct a bearing on a defendant's guilt as the truthfulness of the testimony of the defendant himself." *Id.* Where the veracity of a witness was not seen as being as critical to the determination of guilt or innocence as the defendant's credibility would be, the

polygraph examination's utility could not be justified in view of its costs in trial time and its potential for jury confusion. *Id.* at 397-398. Absent a stipulation, which would not serve to enhance the reliability of test results, but only to waive objection to their introduction, we declined to extend *Vitello* to witness polygraph examinations. *Id.* at 398.

Our canvass of the jurisdictions which have addressed the problem of stipulations in this connection reveals a significant lack of uniformity.[2] Indeed, we note that some jurisdictions, which earlier admitted polygraph evidence, no longer do so at all, regardless of the existence of a stipulation. *State* v. *Grier,* 307 N.C. 628, 645 (1983). *State* v. *Dean,* 103 Wis. 2d 228, 279-280 (1981).

We today announce the rule that the polygraph test results of a nonparty witness are not admissible in evidence in a criminal trial. This rule will apply regardless of whether the witness, the defendant, and the Commonwealth have signed a stipulation agreeing to admissibility. In light of the concerns which we have expressed in our earlier decisions, we are not willing at this time to extend the rule of admissibility to non-party witnesses.

The defendant's argument that the test results in the instant case are exculpatory and hence are automatically admissible

---

[2] The use of stipulations in the context of polygraph evidence has been much discussed in other jurisdictions. See, e.g., *State* v. *Molina,* 117 Ariz. 454, 456 (1977) (in paternity proceeding, stipulation by prosecution, defendant, and counsel, or witness and counsel, a precondition to admissibility, subject to judicial discretion); *People* v. *Baynes,* 88 Ill. 2d 225, 239 (1982) (stipulation cannot render admissible otherwise inadmissible evidence); *Pavone* v. *State,* 273 Ind. 162, 164-166 (1980) (prosecution must join stipulation); *Corbett* v. *State,* 94 Nev. 643, 644-647 (1978) (defendant and witnesses' polygraph results admissible where both parties and witnesses join in stipulation); *State* v. *Abel,* 600 P.2d 994, 996-999 (Utah 1979) (stipulation not signed by prosecution not binding on State); *State* v. *Renfro,* 96 Wash. 2d 902, 905-906 (1982) (stipulation does not enhance reliability, but serves as waiver of objection to admission of polygraph results); *State* v. *Young,* 87 Wash. 2d 129, 131-132 (1976) (no admission absent stipulation). Also noteworthy is the view that where stipulation is required, prosecutorial refusal to stipulate does not offend due process unless withholding assent is a purely tactical maneuver. See *McMorris* v. *Israel,* 643 F.2d 458, 466 (7th Cir. 1981), cert. denied, 455 U.S. 967 (1982).

is without merit. Although it is the law that "[e]vidence which impeaches the credibility of a key prosecution witness is exculpatory for the defendant and is clearly material," *Commonwealth* v. *Liebman,* 388 Mass. 483, 489 (1983), such evidence must be otherwise admissible.[3]

The case is remanded to the Boston Municipal Court for proceedings consistent with this opinion.

*So ordered.*

---

[3] The defendant argues in this court that failure to admit the polygraph results in question would violate rights guaranteed to him under the Sixth and Fourteenth Amendments to the United States Constitution. We have been unable to find in the record sufficient indication that this issue was adequately raised below. This issue may be raised on remand to the trial court. Although the defendant's memorandum of law in the trial court points to the exculpatory nature of the evidence, this, without more, is insufficient to raise constitutional issues; thus the constitutional questions are not properly before us at this time. See *First Nat'l Bank* v. *Haufler,* 377 Mass. 209, 211 (1979).