COMMONWEALTH *vs.* RAYMOND DARDEN & another (and two companion cases).

Suffolk.   February 14, 1977. — July 19, 1977.

Present: HALE, C.J., GOODMAN, & ARMSTRONG, JJ.

*Arrested Person. Evidence,* Prior consistent statement. *Practice, Criminal,* Admissions and confessions, Charge to jury, Judicial discretion, Continuance.

A motion to suppress an inculpatory statement of a defendant in a criminal case was properly denied where the Commonwealth proved beyond a reasonable doubt that the statement was not obtained as a result of failure of police to inform him of his right to use a telephone or permit his use thereof for approximately two hours after his arrival at a police station. [525-526]

At a criminal trial it lay within the discretion of the judge to admit prior consistent statements contained in an official report by a Federal agent testifying for the Commonwealth, where the defense had attempted to impeach the witness by showing that such statements, relating to the possession and use of a shotgun by a companion of the defendants, were omitted from his substantially contemporaneous response to inquiries by police. [526-530]

There was no error in the denial of a criminal defendant's request for a jury instruction emphasizing that his testimony should be weighed by the same standard as that of any other witness, where the charge made clear that the jury could not reject the defendant's testimony solely because he was on trial. [530-531]

---

A judge at a criminal trial did not abuse his discretion by denying a
continuance to permit a defendant to locate a missing witness,
where the request was not timely and the testimony sought was of
only marginal significance. [531-532]

INDICTMENTS found and returned in the Superior Court
on October 16, 1975.

The cases were tried before *Chmielinski, J.*

*Robert S. Potters* for Raymond Darden.

*Charles A. Roberts* for James Ferriabough.

*John A. Kiernan,* Assistant District Attorney, for the
Commonwealth.

ARMSTRONG, J.   The defendants, Darden and Ferria-
bough, were indicted jointly for conspiracy to distribute
cocaine and separately for armed robbery.[1] They were con-
victed of those offenses and have appealed under G. L.
c. 278, §§ 33A-33G. The evidence taken in the light most
favorable to the Commonwealth warranted the jury's find-
ing the following to be the facts which supported the con-
victions.

On September 29, 1975, one Dooling, a police informant,
who had previously witnessed Ferriabough obtaining drugs
for an addict, and who had been called on the telephone by
Ferriabough to see if he wanted to buy an ounce of cocaine
for $1,200, met Ferriabough near a bar in the vicinity of
LaGrange Street in Boston. Darden was with Ferriabough.
The defendants said they were prepared to sell him the
ounce of cocaine. Dooling stated that he had been unsuc-
cessful in obtaining the money for the purchase, which an-
gered Ferriabough. Dooling was permitted to test the co-
caine. While waiting to test the cocaine, he saw Darden,
and later, Ferriabough, talking with one Mayo, who had

---

[1] The defendant Darden was also found guilty on an indictment
charging possession of a sawed-off shotgun, but he was not sentenced
thereon, the indictment being instead placed on file. The proceedings
on that indictment are not now before us. See *Commonwealth* v. *Del-
gado,* 367 Mass. 432, 437-438 (1975). We observe, however, that there
is nothing in the points argued in these appeals which would call for
setting aside of the verdict entered on that indictment.

been in the bar. Dooling and the defendants arranged a meeting for the following day for the purpose of completing the transaction. Dooling informed Detective Maher of the Boston police drug control unit of the impending sale.

On September 30, Dooling met at Boston police headquarters with Detective Maher and one Stephen Murphy, an agent of the Drug Enforcement Administration (DEA) of the United States Department of Justice. Fifteen hundred dollars in marked bills was hidden in the trunk of Dooling's car. Murphy and Dooling then drove the car to the arranged meeting place, a club in Park Square. They were followed surreptitiously by a number of DEA agents and Boston police officers, including Detective Maher. Darden insisted that the transaction take place in another location, saying that he had to be careful because he had just completed serving a Federal prison term for narcotics violations. The place chosen was on Huntington Avenue, in front of the Young Men's Christian Association. Ferriabough joined Murphy and Dooling in Dooling's car; Darden took a taxicab to pick up Mayo, who (according to Darden) had the cocaine. The Dooling car arrived first. When the taxicab came, Darden got out, got into Dooling's car, and directed Murphy, who was driving, to a place near the end of Gainsborough Street, where a footbridge crosses railroad tracks. Murphy parked the car some distance away. Darden got out, walked to the end of Gainsborough Street, and entered the waiting taxicab. Mayo got out of the taxicab and waited. Murphy and Ferriabough walked to the end of Gainsborough Street and met Mayo, who said he would hand over the cocaine on the footbridge. Darden, seated in the taxicab, held a silver shopping bag on his lap. As Murphy and Ferriabough walked towards the footbridge, Mayo went to the taxicab, took the silver shopping bag, and followed the other two. He sat on the stairs of the footbridge, waited for a woman and children to pass, then reached into the shopping bag and pulled out a sawed-off shotgun. He aimed it at Murphy's stomach. Ferriabough laughed and took the car keys from Murphy. He returned to the Dooling car, opened the trunk where he knew the

money was hidden, removed it, and started to flee. Meanwhile, Mayo had ordered Murphy to walk across the footbridge, threatening, when Murphy feigned illness, "to kill [him] right there." At some point Murphy drew a hand gun from his waistband, and a gunfight ensued in which Mayo was mortally wounded. DEA agents and Boston police officers converged on the scene. Darden, Ferriabough and the taxi driver were all arrested and taken to Boston police headquarters. The time was then approximately 2:30 P.M. At 5:20 P.M., Ferriabough made a statement to the police which was taped and which amounted to a confession on the conspiracy charge. It also confirmed many of the facts stated above concerning the armed robbery charge but portrayed the defendants as surprised by Mayo's possession and use of the gun. The statement was read in evidence during the cross-examination of Ferriabough.

1. The defendants contend that the judge erred in denying Ferriabough's pre-trial motion to suppress his statement and in allowing it in evidence. At the voir dire the defendants sought to show that the statement was obtained by threats and coercion and that the police denied the defendants their rights under G. L. c. 276, § 33A, to make telephone calls within an hour after their arrests. The evidence adduced by the defendants to substantiate the claim of threats and coercion was not consistent (the taxi driver's testimony differed substantially from the defendants') and was explicitly denied by each of the law enforcement officers who testified. By his denial of the motion the judge impliedly accepted the testimony of the latter.[2]

We may assume that the judge, in the absence of evidence to the contrary from the police, credited the testimony of the defendants and the cabby that they were not informed of their right to use the telephone nor permitted use thereof for approximately two hours after their arrival at the police station. Those omissions, even if not inten-

---

[2] The defendants have not based any contention on the failure of the judge to make express findings. Compare *Commonwealth* v. *Flaherty,* 1 Mass. App. Ct. 282, 287 (1973).

tional, would violate the provisions of § 33A and would require suppression of any evidence obtained as a result thereof. *Commonwealth* v. *Bouchard*, 347 Mass. 418, 419-421 (1964). *Commonwealth* v. *Jones*, 362 Mass. 497, 502 (1972). If such an omission is intentional, an in-custody inculpatory statement is inadmissible unless the Commonwealth proves "beyond a reasonable doubt that the evidence is untainted by the deprivation of the defendant's right." *Id.* at 503.

That burden was met in this case. The evidence was uncontradicted that the defendants were fully informed, not only of their Miranda rights, but also of their present right to use the telephone, before the start of the interrogation which resulted in Ferriabough's statement. From all the evidence at the voir dire it appears that the delay was caused by the fact that Detective Maher, who was in charge of the case, was delayed for more than two hours at the scene of the arrests, very likely due to the unexpected homicide, and that until his arrival at the station the defendants were simply made to wait. Upon his arrival, all proper procedures were followed, and no evidence was obtained, or sought to be obtained, from either defendant prior to Detective Maher's arrival. The judge did not err in denying the motion to suppress the statement Ferriabough made thereafter.

2. The defendants argue that the judge erred in permitting the Commonwealth to use a prior consistent statement relating to two significant portions of Murphy's testimony. The ruling was made in the following context.

Murphy had testified on direct examination (1) that Darden carried on his lap in the taxicab the silver shopping bag from which Mayo later pulled the sawed-off shotgun, and (2) that Ferriabough laughed when Mayo pulled out the gun and aimed it at Murphy's stomach. Those details of Murphy's testimony were of significance in the Commonwealth's case because of the defendants' position, advanced in Ferriabough's confession and again in his testimony at trial, that he and Darden were unaware that Mayo

was carrying a gun, and that they had no intention of robbing Murphy.[3]

In cross-examination the defendants attempted to impeach Murphy's testimony in those respects through the use of a transcribed statement which Murphy had made to officers of the homicide division of the Boston police a few hours after the shooting incident and which made no mention of either of the disputed facts. On redirect examination the Commonwealth was permitted, over objection and exception, to show that Murphy had made mention of both facts in the written report which Murphy had filed with his own agency six days after the incident. It could be found, on Murphy's testimony, that Murphy had actually written the report the morning after the incident.

The general rule is well established, that a witness's testimony at trial may not be bolstered or corroborated by evidence that he said the same thing on prior occasions. *Commonwealth* v. *Tucker*, 189 Mass. 457, 484 (1905). *Commonwealth* v. *Retkovitz*, 222 Mass. 245, 249-250 (1915). *Wilson* v. *Jeffrey*, 328 Mass. 192, 194 (1951). *Commonwealth* v. *Zukoski*, 370 Mass. 23, 27 (1976). See generally 4 Wigmore, Evidence §§ 1122-1133 (Chadbourn rev. 1972). But it is also well settled that when a witness's testimony at trial is impeached by a prior statement, the witness must be permitted to explain the prior statement and the reason for any omission or inconsistency. *Commonwealth* v. *Smith*, 329 Mass. 477 (1952). *Commonwealth* v. *Fatalo*, 345 Mass. 85 (1962). Leach & Liacos, Massachusetts Evidence 130 (1967). 3A Wigmore, Evidence § 1044 (Chadbourn rev. 1970). 2 Torcia, Wharton's Criminal Evidence § 499 (13th ed. 1972). If the prior statement suggests that the witness's

---

[3] Ferriabough did not acknowledge in his testimony at trial that he and Darden were conspiring to sell cocaine. His testimony was that they had purchased at a drugstore some nonprescription capsules which contained a white powder resembling cocaine in appearance and taste and that their intent was to defraud Dooling by selling it to him under the pretense of its being cocaine. We reject Ferriabough's third numbered argument, which is based on a contention that his confession did not differ significantly from his testimony at trial.

testimony is of recent contrivance, a prior consistent state-
ment may be shown as part of such an explanation pro-
vided that it has probative value: i.e., provided that it has
a logical tendency to establish the truth of the explanation
and rebut the appearance of contrivance. *Hewitt* v. *Corey,*
150 Mass. 445 (1890). See also *Openshaw* v. *Adams,* 92
Idaho 488, 493-494 (1968); *People* v. *Gentry,* 270 Cal. App.
2d 462, 473 (1969); *Donovan* v. *Moore-McCormack Lines,
Inc.* 266 App. Div. 406 (N.Y. 1943); 2 Torcia, Wharton's
Criminal Evidence § 500, at 495 (13th ed. 1972). Such use
of prior consistent statements should be allowed only with
caution, and where the probative value for the proper pur-
pose is clear, because of the ever present danger that the
jury will, despite instructions, consider the prior consistent
statement as evidence of the facts therein asserted. *Com-
monwealth* v. *Tucker, supra,* at 483-484. *Boutillette* v. *Rob-
bins,* 338 Mass. 195, 197-198 (1958).

The prior consistent statements made in Murphy's DEA
report satisfied the prerequisites for admissibility. The
thrust of the attempted impeachment was to suggest to the
jury that, if Murphy's assertions concerning Darden's pos-
session of the silver shopping bag containing the shotgun
and Ferriabough's reaction to Mayo's use of the gun against
Murphy were true, Murphy would have mentioned them in
an official report made to the police shortly after the event
when his memory of events was fresh; and the showing of
his failure to do so was properly found by the judge (see
*Commonwealth* v. *Zukoski,* 370 Mass. at 25-26) to have
suggested to the jury that those assertions were embellish-
ments or contrivances intended to strengthen the Common-
wealth's case against the defendants. In these circum-
stances it was proper for the Commonwealth to suggest to
the jury that the Boston police report, by which Murphy
was being impeached, was not in fact his official report but
was a series of responses to questions put by homicide bu-
reau police whose main interest lay in recording the circum-
stances of the homicide rather than in marshaling for trial
evidence of the defendants' crimes; and that in preparing
his official investigation report to his own agency, Murphy

did in fact include many details of those crimes not mentioned in the homicide report, including the facts in question. The evidence had a logical tendency to explain the omission and rebut the attempted impeachment. Because (as could be found) the DEA report was made substantially contemporaneously with the Boston police report, it lay within the discretion of the judge to conclude that it had sufficient probative value in rebutting the attempted impeachment to warrant its admission in evidence. Compare *State* v. *Neiman,* 123 N.J.L. 341 (1939); 2 Torcia, Wharton's Criminal Evidence § 500, at 492-495 (13th ed. 1972).[4]

The defendant Darden argues that Murphy's prior consistent statements in the DEA report were inadmissible because they were made after his statements recorded in the Boston police homicide report. Darden cites *Commonwealth* v. *Zukoski, supra,* at 27, for the proposition that a prior consistent statement may never be used to rebut an inference of recent contrivance based on a statement made prior thereto. We think that the defendant reads the cited passage in *Commonwealth* v. *Zukoski* incorrectly. In that case the prior consistent statement offered to rehabilitate the defendant's trial testimony lacked probative value because, in contrast to the two inconsistent statements made to the police immediately after the homicide, it was made substantially later, when the defendant was preparing his defense.[5] We do not read that case as having laid down a hard and fast rule of priority, and we decline to adopt such a rule ourselves. See 4 Wigmore, Evidence § 1126 at 267

---

[4] "If a witness, testifying to a material fact associated with the event in question, is shown to have omitted to mention the fact when giving an account of the event on a prior occasion, it may be proved in reply that at about the same time he did mention such fact...."

[5] Indeed, as the court observed, the statement would very likely have been inadmissible even if made prior to the two inconsistent statements because it would not have had any logical tendency to explain or offset the inconsistency and would have been admissible for no other purpose. *Commonwealth* v. *Zukoski, supra,* at 27. See *Commonwealth* v. *Tucker,* 189 Mass. 457, 480-481 (1905), quoting *Commonwealth* v. *Jenkins,* 10 Gray 485, 488-489 (1858).

(Chadbourn rev. 1972). Cf. *Hewitt* v. *Corey*, 150 Mass. 445
(1890). Rather, the test should remain one of probative
value — whether the prior consistent statement has a logi-
cal tendency to meet and counter the suggestion that the
witness has recently contrived his testimony for purposes
of trial. In making that determination, a measure of discre-
tion must be given to the trial judge (compare *Common-
wealth* v. *Zukoski* at 27, and cases cited), who is in a better
position than an appellate court to evaluate the subtleties
and nuances of the trial and who consequently should not
be reversed for admitting or excluding such testimony ex-
cept where it is clearly shown that his ruling is outside the
proper boundaries of discretion. Such a showing has not
been made in this case.

3. The trial judge denied Ferriabough's request for a
special instruction to the jury relative to assessing the
credibility of his testimony. Assuming, without deciding,
that the requested instruction was sufficiently balanced
that the judge might properly have given it in the form
submitted,[6] we think it nevertheless lay within the judge's
discretion not to give it. Compare *Commonwealth* v. *Green-
berg*, 339 Mass. 557, 585 (1959). He may well have con-
cluded "that the jury in the exercise of common sense and
experience do not need to be told much about this matter."
*Commonwealth* v. *Beal*, 314 Mass. 210, 232 (1943). The
judge's instructions to the jury explained the presumption
of innocence and the heavy burden of proof borne by the
Commonwealth. He explained that in grand jury proceed-
ings "the defendants have no right to introduce evidence,
. . . cannot introduce evidence [, a]nd . . . do not have any
means of defending themselves before the grand jury." In
the face of these instructions it cannot reasonably be con-
tended that the jury were left with the impression that

---

[6] The instruction emphasized that a defendant's testimony should
be weighed by the same standards as that of any other witness and
did not mention the defendant's interest in the outcome of the trial; as
worded, it could be read as suggesting to the jury that they should
disregard the defendant's interest in assessing the credibility of his
testimony.

they could reject Ferriabough's testimony solely because he was on trial. We have considered the cases from other jurisdictions cited by Ferriabough for the proposition that a trial judge in a criminal case must give such a special instruction if requested,[7] as well as cases cited by the Commonwealth to the contrary.[8] Our law has permitted defendants to testify in their own behalf in criminal cases for well over a century (see St. 1866, c. 260, now G. L. c. 233, § 20, Third); and the very absence in our appellate reports since that time of any contention that a judge must give a special instruction concerning the weight to be given a defendant's testimony (compare *Commonwealth* v. *Wright,* 107 Mass. 403 [1871]) seems to us to suggest rather strongly that the defense bar has felt that little purpose would be served by encumbering jury charges with such an instruction.

4. The contention of the defendant Darden that the trial judge abused his discretion in denying a continuance on the final day of the trial to enable Darden to search for and subpoena a witness, one Al Franklin, has no merit whatever: Franklin was the person named by Dooling as the drug addict for whom Ferriabough had procured heroin prior to the events of September 29 and 30 — a story confirmed, incidentally, in Ferriabough's testimony. The transcript does not bear out Darden's contention that his request for the continuance was timely made in the circumstances; more important, it is clear that the purpose for which Franklin's testimony was sought was of only the

---

[7] *State* v. *Swain,* 68 Mo. 605, 616 (1878) (contrast *State* v. *Cooper,* 71 Mo. 436, 441 [1880]). *State* v. *Metcalf,* 17 Mont. 417, 426 (1896). *People* v. *Archibald,* 258 Ill. 383, 388 (1913). *Dunbar* v. *State,* 159 Miss. 603, 608 (1931). *Conn* v. *State,* 205 Miss. 165, 170 (1949).

[8] Examples are: *State* v. *Richardson,* 110 Ariz. 48, 50-51 (1973), cert. den. 415 U. S. 929 (1974); *State* v. *Myers,* 190 Neb. 146, 150-151 (1973); *McNamee* v. *State,* 313 So.2d 392, 395 (Miss. 1975). The latter case has sharply limited the holdings of the Mississippi cases cited by the defendant Ferriabough (see fn.7). See also *United States* v. *Long,* 449 F. 2d 288, 298-299 (8th Cir. 1971), cert. den. 405 U. S. 974 (1972).

most marginal significance in the total context of the trial.[9] Under the test set out in *Commonwealth* v. *Gilchrest,* 364 Mass. 272, 276-277 (1973), the denial of the request was well within the judge's discretion. Compare *Commonwealth* v. *Nassar,* 354 Mass. 249, 264 (1968), cert. den. 393 U. S. 1039 (1969); *Commonwealth* v. *Bettencourt,* 361 Mass. 515, 517-518 (1972); *Commonwealth* v. *LaFleur,* 1 Mass. App. Ct. 327, 330 (1973); *Commonwealth* v. *Dominico,* 1 Mass. App. Ct. 693, 705-706 (1974).

*Judgments affirmed.*

---

[9] The purpose was ostensibly only to elicit the date of the heroin transaction (which Dooling and Ferriabough had testified to) in an apparent effort to probe Dooling's credibility. Ferriabough had testified that the date was Sunday, September 28. Dooling had said he wasn't certain of the date, but thought it might have been a week and a half before the events of the thirtieth. No suggestion was or is made that Franklin was a witness to, or in any way connected with, the events of the twenty-ninth and thirtieth with which the trial was concerned.