COMMONWEALTH *vs.* DONALD P. SAARELA.

Plymouth. October 3, 1978. — November 30, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & ABRAMS, JJ.

*Homicide. Evidence,* Recent invention, Prior consistent statement.

A defendant at a criminal trial was not prejudiced by the admission
  of testimony on direct examination of a Commonwealth witness
  that the witness had made prior consistent statements concerning
  his identification of the defendant, where a claim of recent contriv-
  ance was unavoidable and therefore the statements would have
  been admissible after cross-examination of the witness. [722-724]

INDICTMENT found and returned in the Superior Court
on April 29, 1976.

The case was tried before *Chmielinski,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Henry E. Quarles, Jr. (Cedric C. Crockett* with him) for
the defendant.

*Robert M. Payton,* Assistant District Attorney, for the
Commonwealth.

WILKINS, J. The defendant appeals from his conviction
of murder in the second degree of one Robert G. Holt. We
affirm the conviction.

The focus of the defendant's argument on appeal is his
claim that the trial judge improperly permitted the intro-
duction of evidence of prior consistent statements made
by one Paul Fernald, the only witness who identified the
defendant as present at the scene of the crime. Fernald
made several pretrial statements. In some, he identified
the defendant as the person he saw at the scene, and in
others he did not.

Fernald, who was eleven years old at the time of the
victim's death, testified for the Commonwealth that he

went to the victim's home with his father on the day of the victim's death. They heard a chain saw in the woods and walked toward the noise, across a field, and into the woods. The noise of the chain saw stopped after they entered the woods. Fernald saw someone bending over, that person looked at them, and Fernald saw the person's face for just a second. That person then ran away rapidly. Fernald and his father continued walking and came upon the victim lying on the ground.[1]

Fernald testified that he had seen the defendant before and knew him by name. The person who left the scene looked like the defendant. Two days later, Fernald told his school friend, John Gardner, about what he had seen. When the prosecutor asked Fernald what he had told Gardner, the defendant objected and the question was excluded. The prosecutor then asked Fernald whether he had spoken with the prosecutor sometime within the past month. After Fernald answered affirmatively, upon objection, the judge excluded, "at this time," a question about what Fernald had told the prosecutor. The judge ordered a recess and asked to see counsel. Unfortunately, the discussion with counsel, which presumably occurred during the recess, was not recorded, nor does the transcript indicate what was discussed during the recess or what findings or rulings, if any, the judge may have made.

Immediately after the recess, Fernald was permitted to testify, over a general objection, that he had told the prosecutor what he had just testified to in court. He then pointed to the defendant as the person he had seen running from the scene. He was not asked again to state what he had told his friend Gardner two days after the victim's death.

On cross-examination, Fernald testified that he had talked to the police more than once before testifying at a probable cause hearing in a District Court, but that he

---

[1] The evidence disclosed that the victim had been shot three times. A rifle which the defendant had used for hunting on the day of the crime was linked by ballistics evidence to a cartridge casing found near the victim's body.

had never told them that he had seen someone stooping over a body or that the person he saw looked like the defendant. He had never told his father that the person looked like the defendant, nor did he make the statement at the probable cause hearing. Until he talked with the prosecutor about one month before trial, he had told no one other than his friend Gardner that the person might have been the defendant. He testified that no one at the district attorney's office told him to say that person might have been the defendant. He then conceded that his identification was based on the person's hair and his height, and not on having seen his face.

The prosecutor next called Gardner to testify. Before Gardner testified, defense counsel asked for, and the judge gave, an instruction limiting Gardner's testimony to the question of Fernald's credibility.[2] Gardner testified, over objection, that two days after the victim's death, Fernald had told him on the bus going to school that he thought it was the defendant whom he had seen running through the woods.

The defendant argues that Fernald's previous statements to Gardner and to the prosecutor were inadmissible as prior consistent statements. Such statements are generally inadmissible to corroborate in-court testimony or a witness's credibility, but they are admissible when offered in response to a claim of bias, inducement, or recent contrivance. *Commonwealth* v. *Zukoski*, 370 Mass. 23, 26-27 (1976), and cases cited.

The evidence to which the defendant objects would have been admissible, in the judge's discretion, if it had been presented in the following order. On direct examination, Fernald would have testified that he saw the defendant at the scene of the crime. On cross-examination, the defendant would have established that, on several previous occasions, Fernald had made inconsistent state-

---

[2] This instruction was correct. The identifying witness's extrajudicial statement was not admissible on the question of guilt. This is not a situation involving an extrajudicial identification which might be admissible for all purposes. See *Commonwealth* v. *Fitzgerald, ante* 402, 407-408 (1978).

ments, inconsistent in the sense that he had not identi-
fied the defendant, and that he had disclosed his identifi-
cation to the authorities only within the month before
trial, while talking with the prosecutor. In such a situa-
tion, the judge, in his discretion, could have concluded
that the defendant was arguing that Fernald's identifica-
tion testimony was recently contrived and that, as a re-
sult, evidence of Fernald's prior consistent statement to
Gardner was admissible. See *Commonwealth* v. *Lacy*, 371
Mass. 363, 370-371 (1976); *Commonwealth* v. *Zukoski, su-
pra* at 27; *Commonwealth* v. *Darden*, 5 Mass. App. Ct. 522,
529-530 (1977).

We grant broad discretion to a trial judge to decide the
order in which proof will be presented, and similarly, a
judge has wide discretion in deciding whether the circum-
stances warrant the admission of a witness's prior con-
sistent statements when he has been or will be impeached
with an inconsistent statement. *Commonwealth* v. *Zukos-
ki, supra. Boutillette* v. *Robbins*, 338 Mass. 195, 197-198
(1958). *Commonwealth* v. *Darden, supra.*

Thus, in this case, we discern no error prejudicial to the
defendant unless Fernald's prior consistent statements
would not have been admissible if the evidence had been
presented in the customary order. The defendant con-
cedes that he argued Fernald's identification was of re-
cent fabrication but contends that he was forced to do so
and would not have done so if Fernald had not been per-
mitted to testify, on direct examination, concerning his
prior consistent statements.

We believe that a claim of recent contrivance was una-
voidable, considering the chronology of Fernald's prior
statements. It may be that the judge considered the ques-
tion of recent contrivance when he called a recess and
asked to see counsel.[3] Prior to that recess, the judge had
excluded testimony from Fernald as to the content of his
prior statements, but immediately thereafter he admit-
ted Fernald's statement to the prosecutor and then Gard-
ner's testimony concerning what Fernald had told him.

---

[3] In his brief, the defendant states that during the recess the judge
"discussed this problem with both counsel in the lobby."

Even if the judge's conclusion that the defendant was claiming recent contrivance is not explicit on the record, it is unavoidably implicit. As a matter of proper practice, the defendant was going to have to cross-examine Fernald to show that he had not identified the defendant to the police, to his own father, or at the probable cause hearing, and that he did not do so until he saw the prosecutor about a month before trial. See *Commonwealth* v. *Giacomazza*, 311 Mass. 456, 469 (1942). It does not matter that evidence of Fernald's statement to the prosecutor had already been admitted when Fernald was cross-examined because the claim of recent contrivance, which derives from that conversation, would have had to have been advanced in any event. Although better practice might have called for a different order of proof, the premature admission of evidence offered in anticipatory response to an opponent's claim not yet advanced, but later presented, need not of itself be prejudicial error, if it is error at all. See *Commonwealth* v. *McKay*, 363 Mass. 220, 225 (1973); *State* v. *Herrera*, 236 Or. 1, 8 (1963).[4]

We may briefly dispose of the other arguments advanced by the defendant. The judge properly denied the defendant's motion for a directed verdict. The evidence presented a jury question. The judge did not abuse his discretion in denying the defendant's motion for a new trial. No significant issue not already discussed was raised by that motion. There is no occasion for relief under G. L. c. 278, § 33E. The defendant's argument that

[4] The defendant relies on *Commonwealth* v. *Retkovitz*, 222 Mass. 245, 252-253 (1915), for the proposition that he should not be prejudiced for arguing recent contrivance when evidence of prior inconsistent statements was improperly before the jury. We held in that case that the defendant had not waived his right to object to the improper admission of prior consistent statements by arguing recent contrivance in his final argument to the jury. The judge had improperly refused to strike or exclude prior consistent statements after the defendant initially asserted and then withdrew a claim of recent contrivance. This case and the *Retkovitz* case are not similar. In the *Retkovitz* case, there was no factual basis for a claim of recent contrivance. Here, there was ample warrant to argue recent contrivance; competent counsel had to assert the claim; and he did so ably in the cross-examination of Fernald, although to no avail.

this court should direct that the verdict be reduced to manslaughter is not supported, particularly where the evidence shows that the victim was shot three times.

*Judgment affirmed.*